IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

BALDWIN DAIRY, INC.,
AMIR BEN-YEHOSHUA,

                      OPINION & ORDER

            Plaintiffs,

     v.                                                14-cv-767-jdp

UNITED STATES OF AMERICA,
JEH JOHNSON, LEON RODRIGUEZ, and
LORETTA LYNCH,

           Defendants.[1]

---

      Plaintiff Baldwin Dairy, Inc. is a Wisconsin corporation that wants to employ plaintiff Amir Ben-Yehoshua to manage its dairy farm. Ben-Yehoshua is not a United States citizen, and so Baldwin Dairy petitioned the United States Citizenship and Immigration Services (USCIS) for an immigrant visa on his behalf. That petition was denied, initially and in several subsequent rounds of agency review. The Administrative Appeals Office (AAO) found that Baldwin Dairy failed to substantiate its ability to pay Ben-Yehoshua's proffered wage—a statutory prerequisite for a visa—and the agency denied the petition on that basis. Baldwin Dairy and Ben-Yehoshua seek judicial review of the AAO's final decision.

      The parties have filed cross-motions for summary judgment. Dkt. 10 and Dkt. 15. Because the Administrative Procedure Act limits the scope of the court's review, the issue in this case is whether the AAO's decision was arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law. The court concludes that the AAO's decision clears this low hurdle, and defendants are therefore entitled to summary judgment.

---

[1] Pursuant to Federal Rule of Civil Procedure 25(d), the court has amended the caption to identify the officers who succeeded Alejandro Mayorkas and Eric Holder.

UNDISPUTED FACTS[2]

In 2005, Baldwin Dairy began taking steps to employ Ben-Yehoshua as a manager at its dairy farm in Baldwin, Wisconsin. Because Ben-Yehoshua is not a United States citizen, Baldwin Dairy had to traverse a two-step administrative process to secure a visa for him as a "skilled worker" or "professional," as those terms are used in the Immigration and Nationality Act, 8 U.S.C. § 1153(b)(3)(A). First, Baldwin Dairy obtained an Alien Employment Certification from the U.S. Department of Labor, indicating that "there are not sufficient U.S. workers available and the employment of [Ben-Yehoshua] will not adversely affect the wages and working conditions of workers in the U.S. similarly employed." R. 371. Second, with the certification in hand, Baldwin Dairy filed a Form I-140 petition with USCIS, seeking an employment-based immigrant visa. USCIS denied the petition. This case is about USCIS's denial, and the AAO's subsequent affirmance of that decision.

Before granting an employer's Form I-140 petition, USCIS must determine whether the employer has the ability to pay the wage that the employer identified in its submissions to the Department of Labor. An employer must demonstrate a continuing ability to pay the proffered wage for every year between the date that it submits materials to the Department of Labor and the date of USCIS's determination, or the AAO's determination if the initial decision is appealed. In this case, Baldwin Dairy purported to be able to pay Ben-Yehoshua a yearly salary of $97,560, and the priority date of its petition was March 23, 2005.

---

[2] The court draws these facts from the Administrative Record, Dkt. 14 (filed conventionally), rather than from the parties' proposed findings of fact. Pinpoint citations refer to the record's internal pagination. Defendants correctly observe that judicial review of agency decisions typically does not involve fact development; the record supplies the undisputed facts of the case. To comply with this court's summary judgment procedures, however, the parties filed proposed findings of fact with their motions. *See* Dkt. 11 and Dkt. 17. The court acknowledges (and appreciates) the parties' diligence and attention to local procedures.

There are several ways for an employer to establish its ability to pay. If the prospective employee (referred to as the "beneficiary") actually works for the petitioning employer, then the beneficiary's W-2 form is sufficient to demonstrate the employer's ability to pay the proffered wage for a given year. If the beneficiary does not work for the employer, or if he receives less than the proffered wage, then the employer must establish that its net income or its net assets exceed the proffered wage for a given year. A company's tax returns are the typical method for demonstrating net income and net assets.

Ben-Yehoshua did not work for Baldwin Dairy during the relevant time period, and so USCIS relied on Baldwin Dairy's tax filings to determine whether the company had the ability to pay the proffered wage. Baldwin Dairy reported negative net income in 2005, 2006, and 2007, which meant that it needed to establish its ability to pay Ben-Yehoshua through net assets. For 2005 and 2007, Baldwin Dairy's net assets were sufficient. But for 2006, Baldwin Dairy's net assets were less than the proffered wage. USCIS therefore determined that Baldwin Dairy had failed to establish its ability to pay the proffered wage, and the agency denied the Form I-140 petition.

Baldwin Dairy appealed the initial determination to the AAO. As part of that appeal, Baldwin Dairy acknowledged that its tax forms contained errors that led to an inaccurate calculation of its net assets in 2006. Specifically, Baldwin Dairy explained that its accountant incorrectly categorized portions of the balances on two loans as "current" liabilities rather than "long-term" liabilities.[3] According to the amended tax forms that Baldwin Dairy submitted to the AAO, its net assets in 2006 were greater than the proffered wage. Despite

---

[3] USCIS and the AAO calculate "net assets" by subtracting an employer's year-end "current liabilities" from its "current assets." *See* R. 3 n.1. Long-term liabilities (*i.e.*, liabilities payable after one year or longer) are not included in this calculation.

3

this clarification, the AAO dismissed Baldwin Dairy's appeal, concluding that the company failed to provide objective evidence that justified re-characterizing its liabilities.

Baldwin Dairy moved the AAO to re-open its decision on two separate occasions. The AAO granted these motions and even modified aspects of its reasoning, but the agency ultimately affirmed its initial decision. The AAO was not convinced that the characterization was actually a mistake, emphasizing in its most recent decision that Baldwin Dairy:

> failed to submit evidence of the original promissory note, the terms and conditions of the loan, the date the original promissory note was signed, statement of loan payments, or balance statements for 2006 and 2007 to support [its] accountant's statements regarding the appropriate distribution of the [first] loan during the relevant period.

R. 4. In short, the AAO concluded that statements from Baldwin Dairy's accountant and its amended—but unaudited—tax forms were not "independent object evidence" capable of resolving the inconsistencies in Baldwin Dairy's initial calculation of its net assets. *Id.* Thus, the AAO found that Baldwin Dairy had not demonstrated an ability to pay the proffered wage in 2006.

Unfortunately for Baldwin Dairy, proving its ability to pay the proffered wage became more burdensome as the administrative review went on because it had to demonstrate an *ongoing* ability to pay the proffered wage. Baldwin Dairy therefore supplemented its financial evidence to prove its ability to pay in each year that the Form I-140 petition remained pending. From these records, the AAO eventually determined that in addition to problems with 2006, Baldwin Dairy could not establish an ability to pay the proffered wage in 2009. Baldwin Dairy responded to this new issue by asserting that it experienced unusual business losses and expenditures in 2009, making the year a fiscal anomaly for the company. The

4

AAO rejected this argument, disagreeing with Baldwin Dairy's summary of its financial history and again concluding that the record lacked objective evidence to support the company's assertions.

The end result of this nearly decade-long process was the AAO's conclusion that Baldwin Dairy failed to demonstrate an ability to pay the proffered wage in 2006 and in 2009. Dissatisfied, Baldwin Dairy and Ben-Yehoshua filed a complaint against the United States and several high-level officers (sued in their official capacities), seeking judicial review of the AAO's decision.[4] Both sides have moved for summary judgment.

ANALYSIS

This is an action for judicial review under the Administrative Procedure Act. 5 U.S.C. § 701 *et seq*. The Act itself does not give federal courts jurisdiction to review agency action, but in conjunction with 28 U.S.C. § 1331, the court has subject matter jurisdiction. *Califano v. Sanders*, 430 U.S. 99, 105 (1977). The scope of review is narrow: the court sets aside agency action only if it is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law [or] unsupported by substantial evidence." 5 U.S.C. § 706(2). This standard is highly deferential to the agency.

To clear the arbitrary and capricious hurdle, the agency's decision must provide "an adequate explanation for the decision . . . . USCIS need only announce its decision in terms sufficient to enable a reviewing court to perceive that it has heard and thought and not

---

[4] In the body of their complaint, Baldwin Dairy and Ben-Yehoshua suggest that several administrative agencies are also defendants in this case. *See* Dkt. 2, ¶¶ 8-10. Baldwin Dairy and Ben-Yehoshua did not include these defendants in the caption, naming instead the officials in charge of each of these agencies. The court therefore does not consider the agencies themselves to be defendants in this case.

merely reacted." *Ogbolumani v. Napolitano*, 557 F.3d 729, 734-35 (7th Cir. 2009) (internal citations and quotation marks omitted). And "[s]ubstantial evidence is no more than such relevant evidence as a reasonable mind might accept to support a conclusion." *Alden Mgmt. Servs., Inc. v. Chao*, 529 F. Supp. 2d 882, 888 (N.D. Ill. 2007), *aff'd*, 532 F.3d 578 (7th Cir. 2008) (internal citations and quotation marks omitted). It is "not enough that [the court] might have reached a different conclusion; so long as a reasonable mind could find adequate support for the decision, it must stand." *Ogbolumani*, 557 F.3d at 733.

Baldwin Dairy and Ben-Yehoshua have a tall task. At the administrative level, it was Baldwin Dairy's burden to establish that Ben-Yehoshua was eligible to receive a visa. 8 U.S.C. § 1361. USCIS and the AAO repeatedly reminded Baldwin Dairy of this burden. *See, e.g.*, R. 7, 107, 257, 295. Now, in the context of judicial review, Baldwin Dairy and Ben-Yehoshua must prove that the AAO's decision regarding Baldwin Dairy's failure to carry its burden was arbitrary, capricious, or without substantial evidence. *Sierra Club v. Marita*, 46 F.3d 606, 619 (7th Cir. 1995). The AAO identified two separate deficiencies in Baldwin Dairy's petition: inability to pay in 2006, and inability to pay in 2009. R. 7. Baldwin Dairy and Ben-Yehoshua must overcome both of these deficiencies because either, standing alone, would have been sufficient to deny the petition.

The court will not set aside the AAO's decision. The record contains ample support for the AAO's concerns about Baldwin Dairy's ability to pay the proffered wage in 2006 and in 2009. And for all of Baldwin Dairy's explanations, the company consistently failed to respond to the agency's requests for documentation. The AAO did not act arbitrarily or capriciously in requiring objective evidence from Baldwin Dairy, and the record contains

substantial evidence to support its decision denying the Form I-140 petition. Summary judgment for defendants is therefore appropriate.

**A. Baldwin Dairy's ability to pay in 2006**

Baldwin Dairy's ability to pay the proffered wage in 2006 turns on the classification of two then-outstanding debts. The first debt was a loan from Komro Sales, Inc., and the second was a sales debt to Genex/Central Livestock. In Baldwin Dairy's initial Form I-140 petition to USCIS, the company submitted tax forms characterizing the remaining balances on both debts as current liabilities. Relying on these submissions, USCIS determined that Baldwin Dairy's net assets were below the proffered wage. R. 295. In proceedings before the AAO, Baldwin Dairy repeatedly argued that it had mistakenly characterized its liabilities, and the company offered evidence to support its explanations. But at every step of the AAO's review, the agency acknowledged Baldwin Dairy's submissions and adequately articulated why they nevertheless fell short of demonstrating an ability to pay the proffered wage in 2006.

Baldwin Dairy's first round of supplemental evidence included an amended tax form and a letter from Bradley Guinn, the company's accountant. R. 277-81. The AAO initially rejected this evidence because Baldwin Dairy never filed the amended tax returns with the Internal Revenue Service, but the agency later withdrew that objection.[5] But the AAO also commented that Baldwin Dairy did not provide complete copies of its amended tax returns or copies of the Komro and Genex loan agreements, which would have allowed the agency to independently calculate current and long-term liabilities. R. 261.

---

[5] Baldwin Dairy did not change its taxable income by re-characterizing its liabilities, and so the IRS would not have accepted a new return.

Baldwin Dairy successfully moved the AAO to revisit this decision, and the company submitted a second round of supplemental evidence. This evidence included a new letter from Mr. Guinn (largely repeating statements from his earlier letter), and two promissory notes. R. 239-41. After reviewing the submissions, the AAO identified several discrepancies:

1. Mr. Guinn's first letter reported that Baldwin Dairy owed a total of $257,635.97 on the Komro loan at the end of 2006, but a corresponding promissory note dated March 1, 2008, contained a promise to pay a "principal sum" of $182,133.67.

2. Mr. Guinn's first letter reported that Baldwin Dairy owed a total of $275,000 on the Genex loan at the end of 2006, but a letter from Genex dated December 12, 2006, indicated a total balance of $475,000.

3. Mr. Guinn's first letter indicated that of the $275,000 Genex loan, $55,000 of the debt should have been characterized as a current liability in 2006 and $210,000 of the debt should have been characterized as a long-term liability. This re-characterization left $10,000 unaccounted for, and it was therefore suspect.

R. 104-05. In light of these inconsistencies, the AAO expressed "material doubts about [Baldwin Dairy]'s explanation of the misclassification of the loans' balances on its 2006 tax returns." R. 104. The agency therefore concluded that Baldwin Dairy had again failed to demonstrate its ability to pay the proffered wage in 2006. R. 105.

Baldwin Dairy tried a third time, submitting a sworn affidavit from Mr. Guinn. R. 22-26. The affidavit addressed the inconsistencies that the AAO highlighted. With regard to the Komro loan, Mr. Guinn explained that the promissory note's reference to a "'principal sum' was never intended to describe the original amount of the debt, nor the balance remaining as of December 2006. Rather, the phrase 'principal sum' was used to memorialize the balance of the debt as of March 2008." R. 24. According to Mr. Guinn, the note's author was not a certified public accountant, nor did he have a background in accounting. *Id.* With regard to the Genex loan, Mr. Guinn explained that Baldwin Dairy made a payment of $200,000 on

8

December 20, 2006, after the date of Genex's letter but before the "year-end" balance that Mr. Guinn calculated in his first letter. Finally, Mr. Guinn admitted that the missing $10,000 in his re-characterization of the Genex loan was a scrivener's error.

The AAO acknowledged Baldwin Dairy's new evidence and Mr. Guinn's sworn statements. R. 4-5. But these submissions did not assuage the AAO's doubts about the Komro and Genex loans. For the Komro loan, the agency criticized Baldwin Dairy for not submitting the original promissory note, documents with the terms of the loan, or balance statements reflecting Baldwin Dairy's payments. R. 4. Without audited financial records to support Mr. Guinn's affidavit, the AAO refused to accept the accountant's bald assertions as adequate proof of the correct characterization of the Komro loan in 2006. *Id.* For the Genex loan, the AAO accepted Mr. Guinn's explanation with regard to the clerical error and the payment on December 20, 2006. But the agency repeated its concerns about the lack of supporting documentation, emphasizing that Baldwin Dairy never provided objective evidence of the payment due dates for the Genex loan or the original promissory note with the terms of the loan. R. 5. The AAO therefore reaffirmed its conclusion that Baldwin Dairy failed to demonstrate an ability to pay the proffered wage in 2006.

Now, in their action for judicial review, Baldwin Dairy and Ben-Yehoshua mostly rehash the evidence that was before the AAO, and they simply repeat Baldwin Dairy's explanations for the mistaken initial classification of the Komro and Genex loans. *See* Dkt. 12, at 9-11. The problem with this approach is that Baldwin Dairy and Ben-Yehoshua are effectively asking the court to re-weigh the evidence and reach an independent conclusion on the merits of the Form I-140 petition. Supreme Court precedent squarely prohibits the court from undertaking any such review. *See F.C.C. v. Fox Television Stations, Inc.*, 556 U.S.

9

502, 513 (2009) ("We have made clear, however, that 'a court is not to substitute its judgment for that of the agency.'") (quoting *Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983)). The appropriate inquiry in this case is whether the AAO adequately explained its evaluation of the evidence. And on this issue, Baldwin Dairy and Ben-Yehoshua offer weak justifications for overturning the agency's decision.

Baldwin Dairy and Ben-Yehoshua contend that the AAO misapplied 8 C.F.R. § 204.5(g)(2) in adjudicating the petition. The court disagrees. The regulation states, in pertinent part, that evidence of a petitioning-employer's ability to pay the proffered wage "shall be either in the form of copies of annual reports, federal tax returns, or audited financial statements. . . . In appropriate cases, additional evidence, such as profit/loss statements, bank account records, or personnel records, may be submitted by the petitioner." 8 C.F.R. § 204.5(g)(2). According to Baldwin Dairy and Ben-Yehoshua, Mr. Guinn's affidavit—sworn to under penalty of perjury—resolved any discrepancies in the record and was adequate evidence of Baldwin Dairy's ability to pay the proffered wage. Thus, it was arbitrary and capricious for the AAO to ignore this evidence.

The AAO did not "ignore" any evidence, contrary to Baldwin Dairy and Ben-Yehoshua's assertions. The agency's critique was one of sufficiency. Indeed, the AAO's most recent opinion explicitly recounts Mr. Guinn's material assertions and even accepts some of his explanations for the inconsistencies surrounding the Komro and Genex loans. But as the AAO explained, Baldwin Dairy did not provide objective evidence *to support* Mr. Guinn's statements. Baldwin Dairy and Ben-Yehoshua contend that the accountant's declaration itself was adequate evidence, and that it needed no additional support. But the AAO rejected this proposition, applying its own precedent and indicating that "[g]oing on record without

10

supporting documentary evidence is not sufficient for purposes of meeting the burden of proof in these proceedings." R. 4 (citing *In Re Soffici*, 22 I. & N. Dec. 158, 165 (BIA 1998)). Given that § 204.5(g)(2) requires documentary evidence, the AAO's insistence on audited financial records is not surprising, and it is certainly not arbitrary or capricious.

Moreover, the AAO was not asking for much. Baldwin Dairy's ability to pay in 2006 turned on a fairly straightforward issue: the portion of its debt that was properly characterized as a current liability in 2006. In all three of its decisions, the AAO faulted Baldwin Dairy for not submitting documentation regarding its loans. The AAO provided examples of the evidence that it required: the original notes, the terms and conditions of the loans, or balance statements. And yet, Baldwin Dairy never submitted these documents, instead relying on conclusory statements from its accountant. From the beginning, the AAO was justifiably skeptical about Baldwin Dairy's motives and whether the company simply "amend[ed] its tax return for the sole purpose of establishing its ability to pay the proffered wage." R. 260. Baldwin Dairy failed to assuage that skepticism, despite several opportunities to do so.

The AAO acknowledged the very evidence on which Baldwin Dairy and Ben-Yehoshua now base their challenge, and the agency adequately explained how that evidence failed to satisfy the regulatory requirements for an employment-based visa. This court's task is not to reweigh the evidence, but to ensure that the agency "examine[d] the relevant data and articulate[d] a satisfactory explanation for its action including a rational connection between the facts found and the choice made." *Motor Vehicle Mfrs. Ass'n of U.S., Inc.*, 463 U.S. at 43 (internal citations and quotation marks omitted). The AAO complied with this obligation in

concluding that Baldwin Dairy failed to demonstrate its ability to pay the proffered wage in 2006. Defendants are therefore entitled to summary judgment.

## B. Baldwin Dairy's ability to pay in 2009

Baldwin Dairy and Ben-Yehoshua also contend that the AAO incorrectly analyzed Baldwin Dairy's ability to pay the proffered wage in 2009.[6] For 2009, Baldwin Dairy did not rely on the three traditional methods for proving its ability to pay (actual employment of the beneficiary, adequate net income, or adequate current assets). Instead, Baldwin Dairy invoked *In re Sonegawa*, 12 I. & N. Dec. 612, 612 (BIA 1967), claiming that its expenses in 2009 were unusual and not representative of the company's overall financial viability. The AAO considered this exception, but concluded that it did not apply. Based on the record before the agency, that decision was not arbitrary or capricious, or unsupported by substantial evidence.

In *Sonegawa*, the owner of a custom dress boutique sought an employment visa for a citizen of Japan, whom she wanted to employ as an assistant designer. 12 I. & N. Dec. at 613. The business's net profits in 1966 were insufficient to cover the proffered wage, and so the agency denied the owner's application. *Id.* at 614. In reviewing the initial decision, the Board of Immigration Appeals concluded that the business's financial difficulties in 1966 were anomalous because the business relocated, incurred significant moving expenses, paid rent in two locations, and was unable to operate for a substantial portion of the year. *Id.* at 614-15. But the dress shop had been in business for more than 11 years, and the owner

---

[6] Baldwin Dairy needed to establish its ability to pay the proffered wage in each year since the priority date of its application: 2005. *See* 8 C.F.R. § 204.5(g)(2). Because the court has already concluded that the AAO's decision regarding 2006 was not arbitrary, capricious, or unsupported by substantial evidence, there are adequate and independent reasons to affirm the agency's decision. But for purposes of being thorough, the court will address 2009 as well.

submitted evidence of her shop's continued viability and good reputation. Thus, the Board of Immigration Appeals granted the petition for an employment visa, notwithstanding that the dress shop had failed to demonstrate an ability to pay. *Id.* at 615.

In Baldwin Dairy's case, the AAO considered the *Sonegawa* exception. R. 6-7. But the AAO ultimately decided that Baldwin Dairy "failed to identify any unusual business losses or expenditures that otherwise explain[ed] its inadequate financial resources in 2009." R. 6. Baldwin Dairy's principal explanation for its financial situation in 2009 was that it purchased an expensive anaerobic digester, and so its expenses were higher than usual. The AAO rejected this explanation, observing that some categories of expenses actually *decreased* from 2008, a year in which Baldwin Dairy had established an ability to pay. *Id.* And despite increases in other categories, Baldwin Dairy's overall expenses were similar in 2008 and in 2009: $453,274 and $434,379. *Id.* According to the AAO, it was Baldwin Dairy's lack of explanation for its decreased income in 2009 that rendered *Sonegawa* inapplicable. R. 7.

Baldwin Dairy and Ben-Yehoshua contend that the AAO did not properly consider seven applicable factors under *Sonegawa*:

> (1) the number of years the petitioner has been doing business;
> (2) the established historical growth of the petitioner's business;
> (3) the overall number of employees;
> (4) the occurrence of any uncharacteristic business expenditures or losses;
> (5) the petitioner's reputation within its industry;
> (6) whether the beneficiary is replacing a former employee or an outsourced serviced; [and]
> (7) any other evidence that USCIS deems relevant to the petitioner's ability to pay the proffered wage.

Dkt. 12, at 13. But the record is replete with the AAO's discussion of these points and of Baldwin Dairy's failure to submit evidence to support its claim of unusual business expenses.

13

*See* R. 6-7, 105-06, 261-62. Baldwin Dairy and Ben-Yehoshua do not direct the court to evidence that the AAO overlooked. Instead, they again ask the court to re-weigh the evidence and reach a different conclusion than the AAO did. This would be improper. *See Fox Television Stations, Inc.*, 556 U.S. at 513. The AAO's decision was not arbitrary or capricious, and it was supported by substantial evidence. Defendants are therefore entitled to summary judgment.

One closing point. In their reply brief, Baldwin Dairy and Ben-Yehoshua assert for the first time that the AAO improperly analyzed *Sonegawa* with regard to Baldwin Dairy's ability to pay the proffered wage in 2006. *Compare* Dkt. 12, at 12 (discussing *Sonegawa* under the heading: "Baldwin Dairy has established its Ability to Pay the Proffered Wage in 2009"), *with* Dkt. 25, at 9 (discussing *Sonegawa* under the heading: "Baldwin Dairy Met its Burden to Establish Its Ability to Pay the Proffered Wage in the year 2006 and 2009 based on *Matter of Sonegawa*"). Although the AAO's decisions briefly noted that *Sonegawa* would not excuse Baldwin Dairy's failure to demonstrate its ability to pay in 2006, *see, e.g.*, R. 7, 105-06, the agency's focus was on 2009. And in prosecuting its administrative appeals, Baldwin Dairy argued for the *Sonegawa* exception only in the context of its ability to pay in 2009, limiting its discussion of 2006 to the inconsistencies surrounding the Komro and Genex loans. R. 13-21. By waiting until their reply brief to genuinely press the issue, Baldwin Dairy and Ben-Yehoshua have waived their challenge to the AAO's refusal to apply *Sonegawa* to Baldwin Dairy's 2006 financial situation. *Darif v. Holder*, 739 F.3d 329, 336 (7th Cir. 2014) ("[A]rguments raised for the first time in a reply brief are waived."). Even if the point had not been waived, Baldwin Dairy did not offer evidence of unusual business expenses in 2006. The AAO explained that this deficiency precluded applying *Sonegawa*, and the court will not disturb that conclusion.

ORDER

IT IS ORDERED that:

1. Plaintiffs Baldwin Dairy, Inc. and Amir Ben-Yehoshua's motion for summary judgment, Dkt. 10, is DENIED.

2. Defendants United States of America, Jeh Johnson, Leon Rodriquez, and Loretta Lynch's motion for summary judgment, Dkt. 15, is GRANTED.

3. The clerk of court is directed to enter judgment in favor of defendants and close this case.

Entered August 11, 2015.

BY THE COURT:

/s/

_____
JAMES D. PETERSON
District Judge